(56 Misc. Rep. 518.)

### SCHON v. HARLAN.

(Supreme Court, Appellate Term. November 29, 1907.)

WITNESSES—CREDIBILITY—INTEREST—EVIDENCE.

Plaintiff sued on a contract, alleged to have been made with defendant in his private office, that, if plaintiff would procure for him a certain patient, he would pay plaintiff one-third of the amount of the bill. Plaintiff was corroborated by R., who testified that when the contract was made she was in defendant's dental chair, and that defendant left her and went into the private room with plaintiff. Plaintiff and R. were contradicted by defendant and two other witnesses; defendant's employé testifying that she was present when plaintiff called and found R. in the

chair. R. was recalled in rebuttal, and testified that she had no interest in the case, and that defendant's employé was not in the operating room at the time, as she testified. *Held*, that a letter written by R. to defendant, informing him that plaintiff evidently had "something up her sleeve" concerning defendant and another doctor, that she had the assistance of several influential people, and that the writer had pleaded with plaintiff to "suspend her ire" until defendant could see her personally and practically advising defendant to come to terms with plaintiff, was admissible to rebut R.'s testimony that she had no interest in the matter.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 1177.]

Appeal from Municipal Court, Borough of Manhattan.

Action by Joan Schon against Allison W. Harlan. From a Municipal Court judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Burke & Burrell (Isaac F. Russell, of counsel), for appellant.
William C. Wolf (Theo. H. Friend, of counsel), for respondent.

ERLANGER, J. The plaintiff is a professional masseuse. The defendant is a dentist, and performed dental work for her. While she was being treated, she claims that he desired to know who her patients were, and among others the name of Madame Calve was mentioned. Thereupon he is alleged to have said: "If you will bring me up Madame Calve as a patient, I will do a handsome thing by you"—and he then and there agreed to pay her (plaintiff) one-third of the amount of his bill. This promise she asserted was many times repeated to her by the defendant. After Madame Calve had been here for a short time, and while plaintiff was engaged in treating her, the name of the defendant as a dentist was mentioned, and as the Madame was in need of dental services it was arranged that plaintiff should secure for her an appointment with the defendant, and thereupon plaintiff declares she called up the defendant on the 'phone and secured such appointment. That no disappointment would result, plaintiff testified that she personally called and urged the defendant to keep the appointment at the time fixed; that there was present on that occasion a patient of plaintiff, a Mrs. Rees, who was at the time being treated by the defendant; that the great delight of the defendant in securing Madame Calve as a patient was described, and Dr. Fisher was called in to write out the note of appointment; that before leaving she requested the defendant to step into his private office, and there she reminded him of his agreement. No one but themselves was present, and to bind the compact hands were clasped in token of it. Thereafter the defendant professionally treated Madame Calve, for which his charge was $900. The day before the Madame sailed plaintiff demanded to know the amount of his bill, but all information on the subject was refused. Mrs. Rees testified that the defendant, on the occasion when she (plaintiff) called as above stated, left the chair and went into a private room with her; that she knew nothing about the letter (presumably the note of appointment, which

it is claimed Dr. Fisher wrote, the witness being in the chair at the time), and that the defendant asked her several times when plaintiff was going to bring Madame Calve. The defendant and two other witnesses flatly contradicted the plaintiff and her witness in every essential detail. In rebuttal Mrs. Rees was recalled and asked:

"You have no interest in this case, have you? A. Not at all; no."

Defendant's counsel then cross-examined the witness, and a letter written and sent by her to the defendant was offered in evidence. The record shows no other reason for its exclusion, except the words "objected to." The objection was sustained, and the letter excluded and marked for identification. In this letter, which was sent shortly before this action was commenced, the witness wrote, among other things:

"Miss Schon has evidently something up her sleeve which may affect you both [that is, the defendant and Dr. Fisher], more than that transaction with Madame Calve. I want to tell you something on the quiet, Dr. Harlan. Miss S. has lined up a few representative men to back up her argument. Her banker, physicians, and a couple of medical editors, and some of her pet rich patients. What she means to do God only knows; and I plead with her to suspend her ire, until you see her personally and have a calm heart to heart talk with her, as I expect a man of your rank and age would do. Don't let this little woman splather, because she usually succeeds in what she sets out to do."

This letter was written, as claimed by the witness, without the knowledge of plaintiff, and she further testified that, beyond knowing that there was some dispute between the parties, she was entirely ignorant of their business relationship. Counsel for defendant rested upon his exception, and urges upon us that the letter was that of an interested and biased witness, and an attempt on the part of the writer to coerce the defendant by means of covert threats to pay the plaintiff's claim, and that its exclusion was error. Plaintiff was the only witness to prove the contract. She testified that in the presence and hearing of Mrs. Rees she was taken into a private room, and that then and there the compact was again discussed and confirmed. To corroborate her, it was deemed material to call Mrs. Rees, not to prove the obligation alleged to have been assumed by the defendant, but that the parties went into a private room for the purpose of some discussion, presumably to make the contract declared upon. After the close of defendant's case, Mrs. Rees was again called to inform the jury that she had no interest in the case, and that she was positive that plaintiff went into the room, and that the defendant "left her to go there." If this evidence was immaterial to the issue, then the letter was likewise immaterial, and reversible error cannot be predicated upon its exclusion. If material, then its rejection was error.

It is palpably clear that the evidence of Mrs. Rees was deemed of the utmost materiality, and this is shown from the fact that she was recalled to deny her interest in the case, and to reaffirm that the parties left her to go into a room. The jury were thereby led to believe, from other circumstances in the case, that then and there in private this contract was made, and that there was a purpose in securing this

privacy. It was competent, to overcome the possible effect of the evidence of Mrs. Rees on the jury, to show her bias and interest, to the end that her credibility could be passed upon after all the facts in connection with her testimony were known. The reference, too, in the letter, that the witness pleaded with plaintiff to "suspend her ire" until the defendant could personally see her, strongly supports the theory that the letter was probably written after consultation with plaintiff, or at least that she had some knowledge with regard to it. Furthermore, Miss Randel, employed by and called on behalf of the defendant, had testified, that she was present on an occasion when plaintiff called and found Mrs. Rees in the operating chair, and that she heard plaintiff say "that she had recommended Madame Calve to Dr. Harlan, because she knew that Dr. Harlan would do the right thing by Madame Calve, and she told Madame Calve that she expected nothing in return." Mrs. Rees met this evidence, when called in rebuttal, by declaring that "that young lady" was not in the operating room at the time in question. This additional denial indicates, not only the importance of the evidence furnished by Mrs. Rees, but also that the plaintiff's case rests largely upon it. We think the letter should have been admitted, and that its exclusion requires us to reverse the judgment.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs. LEVENTRITT, J., taking no part.